UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Xingyan Cao, He He, Bozheng Jia, Yue Jin, Ying Li, Yiting Su, Haoyi Xie, Junwu Yao, Rong Hua Zheng, and Xingwei Zhu, Individually and on Behalf of All Other Employees Similarly Situated,<br><br>                     Plaintiffs,<br><br>          - against -<br><br>Flushing Paris Wedding Center LLC d/b/a Paris Wedding Center, Laffection Wedding LLC d/b/a Laffection Wedding, Paris Wedding Center Corp. d/b/a Paris Wedding Center, Romantic Paris LLC d/b/a Romantic Paris Wedding, Wedding in Paris LLC d/b/a Wedding in Paris, Max Huang, Sau W Lam, and Fiona Ruihua Yang<br><br>                   Defendants. | Case No.<br><br>**COLLECTIVE & CLASS ACTION COMPLAINT** |

      Plaintiffs Xingyan Cao, He He, Bozheng Jia, Yue Jin, Ying Li, Yiting Su, Haoyi Xie, Junwu Yao, Rong Hua Zheng, and Xingwei Zhu ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, Hang & Associates, PLLC, hereby bring this complaint against Defendants Flushing Paris Wedding Center LLC d/b/a Paris Wedding Center,  Laffection Wedding LLC d/b/a Laffection Wedding, Paris Wedding Center Corp. d/b/a Paris Wedding Center, Romantic Paris LLC d/b/a Romantic Paris Wedding, Wedding in Paris LLC d/b/a Wedding in Paris ("Corporate Defendants"), Max Huang, Sau W Lam, and Fiona Ruihua Yang ("Individual Defendants") (collectively "Defendants"), and allege as follows:

## INTRODUCTION

      1.    Upon information and belief, Defendants own and operate a successful wedding photography business that has stores in a chain at various locations in New York.

1

2.     This is an action brought by Plaintiffs on their own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

3.     Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for all hours worked, minimum wage, and overtime compensation for all hours worked over forty (40) each workweek.

4.     Plaintiffs allege, pursuant to the FLSA, that they are entitled to recover from Defendants: (i) unpaid minimum wages, (ii) unpaid overtime wages, (iii) liquidated damages, (iv) prejudgment and post-judgment interest; and (v) attorneys' fees and costs.

5.     Plaintiffs further allege, pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR"), that they are entitled to recover from  the Defendants: (i) unpaid minimum wages, (ii) unpaid overtime compensation, (iii) unpaid "spread of hours" premium for each day they worked an interval in excess of ten hours,  (iv) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL, (v) liquidated damages equal to the sum of unpaid minimum wage, unpaid  overtime, and unpaid "spread of hours" premium,  pursuant to the NY Wage Theft Prevention Act, (vi) prejudgment and post-judgment interest, and (vii) attorney's fees and costs.

## JURISDICTION AND VENUE

7.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C.  §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

2

8.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

9.     Upon information and belief, Plaintiff Xingyan Cao ("Plaintiff Cao") is an individual residing in Queens County, New York.

10.     Upon information and belief, from in or about July 2014 to March 18, 2020, Plaintiff Cao was employed as a makeup artist by Defendants' wedding photography business. For the vast majority of her employment, Plaintiff Cao worked at Defendants' store located at 42-55 Main Street, Flushing, New York 11355, except that in 2018, Plaintiff Cao worked at Defendants' store located at 35-56 Main Street, Flushing, New York 11356.

11.     Upon information and belief, Plaintiff He He ("Plaintiff He") is an individual residing in Nassau County, New York.

12.     Upon information and belief, from in or about September 2012 to March 31, 2020, Plaintiff He was employed as a bookkeeper by Defendants' wedding photography business for its stores at various locations in New York.

13.     Upon information and belief, Plaintiff Bozheng Jia ("Plaintiff Jia") is an individual residing in Nassau County, New York.

14.     Upon information and belief, from in or about June 2015 to March 2020, Plaintiff Jia was employed as a part-time photographer by Defendants' wedding photography business for its stores at various location in New York.

15.     Upon information and belief, Plaintiff Yue Jin ("Plaintiff Jin") is an individual residing in Queens County, New York.

16.     Upon information and belief, from in or about 2015 to March 4, 2020, Plaintiff Jin was employed as a receptionist and makeup artist by Defendants' wedding photography business located at 35-56 Main Street, Flushing New York 11356 and 42-55 Main Street, Flushing, New York 11355.

17.     Upon information and belief, Plaintiff Ying Li ("Plaintiff Li") is an individual residing in Nassau County, New York.

18.     Upon information and belief, from in or about March 2011 to in or about July 2013, Plaintiff Li was employed as a makeup artist by Defendants' wedding photography business. In or about July 2013, Plaintiff Li quit her job with Defendants. From in or about summer 2017 to March 4, 2020, Plaintiff Li resumed her employment as a makeup artist with Defendants and worked at Defendants' store located at 4711 8th Avenue, Brooklyn, New York 11220 while occasionally being assigned to work at Defendants' store located at 42-55 Main Street, Flushing, New York 11355.

19.     Upon information and belief, Plaintiff Yiting Su ("Plaintiff Su") is an individual residing in Queens County, New York.

20.     Upon information and belief, from on or about September 15, 2010, to March 15, 2020, Plaintiff Su was employed as a receptionist by Defendants' wedding photography business located at 42-55 Main Street, Flushing, New York 11355.

21.     Upon information and belief, Plaintiff Haoyi Xie ("Plaintiff Xie") is an individual residing in Nassau County, New York.

22.     Upon information and belief, from on or about April 27, 2013 to March 15, 2020, Plaintiff Xie was employed as a videographer by Defendant's wedding photography business for its store located at 42-55 Main Street, Flushing, New York 11355.

23.     Upon information and belief, Plaintiff Junwu Yao ("Plaintiff Yao") is an individual residing in Nassau County, New York.

24.     Upon information and belief, from in or about March 2010 to March 1, 2020, Plaintiff Yao was employed as a photographer by Defendants' wedding photography business for its store located at 42-55 Main Street, Flushing, New York 11355.

25.     Upon information and belief, Plaintiff Rong Hua Zheng ("Plaintiff Zheng") is an individual residing in Nassau County, New York.

26.     Upon information and belief, from on or about August 1, 2018 to March 15, 2020, Plaintiff Zheng was employed as a photographer by Defendants' wedding photography business for its stores at various locations in New York.

27.     Upon information and belief, Plaintiff Xingwei Zhu ("Plaintiff Zhu") is an individual residing in Queens County, New York.

28.     Upon information and belief, from on or about March 1, 2017, to March 15, 2020, Plaintiff Zhu was employed as a videographer by Defendants' photography business for its stores at various locations in New York.

## DEFENDANTS

### Corporate Defendants

29.     Upon information and belief, Defendants operate a single integrated wedding photography enterprise with a principal place of business at 42-55 Main Street, Flushing, New York 11355. All of Corporate Defendants are legal entities for Defendants' stores in a chain and involve the same or similar activities necessary to the operation of Defendants' wedding photography business through unified operation and common control for a common business purpose.

5

30.     Upon information and belief, Defendant Flushing Paris Wedding LLC d/b/a Paris Wedding Center is a domestic business corporation organized under the laws of the State of New York with a principal business address at 42-55 Main Street, Flushing, New York 11355.

31.     Upon information and belief, Defendant Flushing Paris Wedding LLC d/b/a Paris Wedding Center had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

32.     Upon information and belief, employees of Defendant Flushing Paris Wedding LLC d/b/a Paris Wedding Center were regularly involved in interstate commerce. For instance, Defendant Flushing Paris Wedding LLC d/b/a Paris Wedding Center has employees who perform duties including purchasing and handling equipment and supplies originated outside the State of New York, traveling outside the state of New York to perform their job, producing work product that were sent to persons outside the State of New York, using electronic devices to complete interstate credit card transactions, and using a telephone, facsimile machine, the U.S. mail or a computer mail system to communicate with persons outside the State of New York.

33.     Upon information and belief, Defendant Laffection Wedding LLC d/b/a Laffection Wedding is a domestic business corporation organized under the laws of the State of New York with a principal business address at 35-56 Main Street, Flushing, New York 11356.

34.     Upon information and belief, Defendant Laffection Wedding LLC d/b/a Laffection Wedding had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

35.     Upon information and belief, employees of Defendant Laffection Wedding LLC d/b/a Laffection Wedding were regularly involved in interstate commerce. For instance, Defendant Laffection Wedding LLC d/b/a Laffection Wedding  has employees who perform duties including purchasing and handling equipment and supplies originated outside the State of New York, traveling outside the state of New York to perform their job, producing work product that were

sent to persons outside the State of New York, using electronic devices to complete interstate credit card transactions, and using a telephone, facsimile machine, the U.S. mail or a computer mail system to communicate with persons outside the State of New York.

36.     Upon information and belief, Defendant Paris Wedding Center Corp. d/b/a Paris Wedding Center is a domestic business corporation organized under the laws of the State of New York with a principal business address at 42-55 Main Street, Flushing, New York 11355.

37.     Upon information and belief, Defendant Paris Wedding Center Corp. d/b/a Paris Wedding Center had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

38.     Upon information and belief, employees of Defendant Paris Wedding Center Corp. d/b/a Paris Wedding Center were regularly involved in interstate commerce. For instance, Defendant Paris Wedding Center Corp. d/b/a Paris Wedding Center has employees who perform duties including purchasing and handling equipment and supplies originated outside the State of New York, traveling outside the state of New York to perform their job, producing work product that were sent to persons outside the State of New York, using electronic devices to complete interstate credit card transactions, and using a telephone, facsimile machine, the U.S. mail or a computer mail system to communicate with persons outside the State of New York.

39.     Upon information and belief, Defendant Romantic Paris LLC d/b/a Romantic Paris Wedding is a domestic business corporation organized under the laws of the State of New York with a principal business address at 35 East Broadway, 1st Floor, New York, New York 10002.

40.     Upon information and belief, Defendant Romantic Paris LLC d/b/a Romantic Paris Wedding had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

41.     Upon information and belief, employees of Defendant Romantic Paris LLC d/b/a Romantic Paris Wedding were regularly involved in interstate commerce. For instance, Defendant

Romantic Paris LLC d/b/a Romantic Paris Wedding has employees who perform duties including purchasing and handling equipment and supplies originated outside the State of New York, traveling outside the state of New York to perform their job, producing work product that were sent to persons outside the State of New York, using electronic devices to complete interstate credit card transactions, and using a telephone, facsimile machine, the U.S. mail or a computer mail system to communicate with persons outside the State of New York.

42.     Upon information and belief, Defendant Wedding in Paris LLC d/b/a Wedding in Paris is a domestic business corporation organized under the laws of the State of New York with a principal business address at 4711 8th Avenue, Unit 1A and 1B, Brooklyn, New York, 11220.

43.     Upon information and belief, Defendant Wedding in Paris LLC d/b/a Wedding in Paris had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

44.     Upon information and belief, employees of Defendant Wedding in Paris LLC d/b/a Wedding in Paris were regularly involved in interstate commerce. For instance, Defendant Wedding in Paris LLC d/b/a Wedding in Paris has employees who perform duties including purchasing and handling equipment and supplies originated outside the State of New York, traveling outside the state of New York to perform their job, producing work product that were sent to persons outside the State of New York, using electronic devices to complete interstate credit card transactions, and using a telephone, facsimile machine, the U.S. mail or a computer mail system to communicate with persons outside the State of New York.

*Individual Defendants*

45.     Individual Defendants are or were officers, directors, managers and/or majority shareholders or owners of Corporate Defendants and, being or having been the three largest

shareholders of Corporate Defendants, are jointly and severally liable for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NY BCL§ 630(a).

46.     Upon information and belief, Defendant Max Huang ("Defendant Huang") is or was the owner of Corporate Defendants and participates or participated in the day-to-day operations of Corporate Defendants and acted intentionally and maliciously. Defendant Huang is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendants.

47.     Upon information and belief, Defendant Huang owns or owned the stock of Corporate Defendants and manages and makes or managed and made all business decisions for Corporate Defendants, including, but not limited to, the amount in salary the employees receive and the number of hours employees work; and being or having been amongst the ten largest corporate shareholders, Defendant Huang is individually liable for unpaid wages under the New York Business Corporation Law Section 630.

48.     Upon information and belief, Defendant Huang determines or determined the wages and compensation of the employees of Defendants, including Plaintiffs, establishes or established work schedules and workload of the employees, maintains or maintained employee records, and has or had the authority to hire and fire employees.

49.     Upon information and belief, Defendant Sau W Lam ("Defendant Lam") is or was the owner of Corporate Defendants and participates or participated in the day-to-day operations of Corporate Defendants and acted intentionally and maliciously. Defendant Lam is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2,

NYLL §2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendants.

50.     Upon information and belief, Defendant Lam owns or owned the stock of Corporate Defendants and manages and makes or managed and made all business decisions for Corporate Defendants, including, but not limited to, the amount in salary the employees receive and the number of hours employees work; and being or having been amongst the ten largest corporate shareholders, Defendant Lam is individually liable for unpaid wages under the New York Business Corporation Law Section 630.

51.     Upon information and belief, Defendant Lam determines or determined the wages and compensation of the employees of Defendants, including Plaintiffs, establishes or established work schedules and workload of the employees, maintains or maintained employee records, and has or had the authority to hire and fire employees.

52.     Upon information and belief, Defendant Fiona Ruihua Yang ("Defendant Yang") is or was the owner of Corporate Defendants and participates or participated in the day-to-day operations of Corporate Defendants and acted intentionally and maliciously. Defendant Yang is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendants.

53.     Upon information and belief, Defendant Yang owns or owned the stock of Corporate Defendants and manages and makes or managed and made all business decisions for Corporate Defendants, including, but not limited to, the amount in salary the employees receive and the number of hours employees work; and being or having been amongst the ten largest

corporate shareholders, Defendant Yang is individually liable for unpaid wages under the New York Business Corporation Law Section 630.

54.     Upon information and belief, Defendant Yang determines or determined the wages and compensation of the employees of Defendants, including Plaintiffs, establishes or established work schedules and workload of the employees, maintains or maintained employee records, and has or had the authority to hire and fire employees.

55.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

56.     Plaintiffs bring this action individually and on behalf of all other and former nonexempt employees who are or were employed by Defendants at their store locations for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") (the "Collective Action Members").

57.     Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of Defendants.

58.     Upon information and belief, there are more than forty (40) Collective Action members, who have worked for or have continued to work for Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

59.     Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

60.     This action should be certified as collective action because the prosecution of separate actions by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would, as a practical matter, be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede such other members' ability to protect their interests.

61.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy as the joinder of all members is impracticable. Inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

62.     Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a.      Whether the Defendants "employed" Collective Action Members within the meaning of the FLSA;

b.      Whether the Defendants' violations of the FLSA are "willful" as the terms is used within the context of the FLSA; and,

c.      Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

63.     Upon information and belief, Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

64.     Upon information and belief, Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

65.     Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at their  store locations in New York doing business as Paris Wedding Center, Wedding in Paris, and Romantic Paris Wedding, on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

66.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, the names and addresses of Class members are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

13

67.     The proposed Class is so numerous that the joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of Defendants, upon information and belief, there are more than forty (40) members of the class.

68.     Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of unlawful tip pooling and/or retention. Defendants' corporation wide policies and practices, including but not limited to their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

69.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage and hour employment litigation cases.

70.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

71.     Upon information and belief, most of the Class members would not likely to file individual suit against Defendants. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

72.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New

15

York law;

b. Whether Defendants maintained a policy, pattern and/or practice of gratuity violations to Plaintiffs and the Rule 23 Class according to NYLL;

c. Whether the Defendants provided wage notices at the time of hiring to Plaintiffs and class members as required by the NYLL;

d. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work.

## **STATEMENT OF FACTS**

73.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

74.     Upon information and information, Defendants operate a wedding photography business and had at most four stores in New York at one time, which are (i) Laffection Wedding, located in Flushing, New York, and operated under Corporate Defendant Laffection Wedding LLC, (ii) Paris Wedding Center, located in Flushing, New York, and operated under Corporate Defendant Paris Wedding Center Corp. and Corporate Defendant Flushing Paris Wedding LLC, (iii) Wedding in Paris, located in Brooklyn, New York, and operated under Corporate Defendant Wedding in Paris LLC, and (iv) Romantic Paris Wedding, located in Chinatown, New York, and operated under Corporate Defendant Romantic Paris Wedding LLC. Among the four stores, Laffection Wedding and Romantic Paris Wedding have been permanently closed; Paris Wedding Center and Wedding in Paris are temporarily closed due to the Covid-19 pandemic. Defendants also own a photography studio in Long Island (the "Long Island Studio") where the clients of Defendants' four stores can visit and use.

75.     Upon information and belief, Defendants knew that the nonpayment of minimum wage, overtime pay, and spread of hours pay, and failure to provide the required wage notice at the time of hiring and to furnish wage statements with every payment of wages would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

76.     Upon information and belief, from in or about July 2014 to March 18, 2020, Defendants hired Plaintiff Cao as a makeup artist. For the vast majority of Plaintiff Cao's employment, she worked at Paris Wedding Center, located at 42-55 Main Street, Flushing, New York 11355, except in 2018, when she was transferred to and worked at Laffection Wedding, located at 35-56 Main Street, Flushing, New York 11356.

77.     Upon information and belief, throughout her employment with Defendants, Plaintiff Cao regularly worked six or seven days a week without set days of rest. On some days, Plaintiff Cao was required to work in the store or in the Long Island Studio, where she would work (i) the morning shift from around 10:00 a.m. to around 5:00 p.m. or 6:00 p.m., (ii) the afternoon shift from around 2:00 p.m. to around 6:00 p.m. or 7:00 p.m., or (iii) the full-day shift from around 10:00 a.m. to around 7:00 p.m. or 8:00 p.m. On the other days, Plaintiff Cao was required to work at clients' weddings, where she would work (i) the half-day schedule of five hours, (ii) the full-day schedule of ten hours, or (iii) the full day and night schedule of twelve hours. Plaintiff Cao did not have uninterrupted meal breaks on workdays. Accordingly, Plaintiff Cao regularly worked more than forty (40) hours per week.

78.     Upon information and belief, throughout Plaintiff Cao's employment with Defendants, Defendants did not utilize time tracking devices to record all hours worked by Plaintiff Cao. Defendants required Plaintiff Cao to clock in and out using punch cards or fingerprints on

the days when Plaintiff Cao worked in the store and in the Long Island Studio, but does not use any time tracking device to record Plaintiff Cao's hours worked at clients' weddings.

79.     Upon information and belief, throughout her employment with Defendants, Plaintiff Cao was compensated as follows: (i) $9 per hour for all hours worked in the store and the Long Island Studio, (ii) $105 for a half day schedule at a wedding, (iii) $200 for a full day schedule at a wedding, and (iv) $305 for a full day and night schedule at a wedding. Plaintiff Cao was scheduled to receive wage payments on the 8th of every month, of which $1300 in check and the remaining in cash. Plaintiff Cao often did not receive payments until one or two months later than the scheduled pay day.

80.     Upon information and belief, throughout her employment with Defendants, Plaintiff Cao was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

81.     Upon information and belief, throughout her employment with Defendants, Plaintiff Cao was not overtime-exempt under federal and state laws.

82.     Upon information and belief, Plaintiff Cao was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Cao), containing information including, but not limited to, her rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

83.     Upon information and belief, Defendants did not provide Plaintiff Cao with a wage statement with every wage payment.

84.     Upon information and belief, from in or about September 2012 to March 31, 2020, Plaintiff He was employed as a bookkeeper by Defendants' wedding photography business for its stores at various locations in New York.

85.     Upon information and belief, from in or about September 2012 to in or about October 2016, Plaintiff He worked at Defendants' store Paris Wedding Center located at 42-55 Main Street, Flushing, New York 11355. During this period of time, Plaintiff He regularly worked seven days a week without set days of rest, from 10:00 a.m. to 2:30 p.m. on Monday through Friday and from 10:00 a.m. to 8:00 p.m. on Saturday and Sunday. From in or about November 2016 to the end of her employment, Plaintiff He mainly worked from home and regularly worked six to seven days a week without set days of rest. Particularly, in each year's February, March, June, September and December, in which months Plaintiff He needed to prepare and file Defendants' sales tax, Plaintiff He regularly worked eight to nine hours per day for seven days a week, totaling approximately 60 hours per week on average. Accordingly, Plaintiff He regularly worked more than forty (40) hours per week.

86.     Upon information and belief, from in or around September 2012 to in or around October 2016, Plaintiff He was required to clock in and out using punch cards. From in or around November 2016 to the end of her employment, Plaintiff He was never required to record her hours worked, nor to her knowledge had Defendants utilized any time tracking device to record her time.

87.     Upon information and belief, from in or around September 2012 to in or around October 2016, Plaintiff received an hourly rate of $10. From in or around November 2016 to April 2017, Plaintiff He received a fixed rate of pay of $2800 per month, regardless of how many hours she worked. From in or around May 2017 until the end of her employment, Plaintiff He was paid $3500 per month, regardless of how many hours she worked. Plaintiff He was scheduled to receive

wage payments in cash on the 8th of every month. Plaintiff He often did not receive payments until months later than the scheduled pay day.

88.    Upon information and belief, throughout her employment with Defendants, Plaintiff He was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

89.    Upon information and belief, throughout her employment with Defendants, Plaintiff He was not overtime-exempt under federal and state laws.

90.    Upon information and belief, Plaintiff He was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff He), containing information including, but not limited to, her rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

91.    Upon information and belief, Defendants did not provide Plaintiff He with a wage statement with every wage payment.

92.    Upon information and belief, from in or about June 2015 to March 2020, Plaintiff Jia was employed as a part-time photographer by Defendants' wedding photography business for its stores at various location in New York.

93.    Upon information and belief, for the majority of his employment with Defendants, Plaintiff Jia regularly worked around three to five days a week without set days of rest. For wedding photoshoots, Plaintiff Jia had the following work schedules: (i) the half day schedule of five hours, and (ii) the full day schedule of ten hours. Additionally, Plaintiff Jia was required to spend time at home to touch up the photos he shot at the weddings. Plaintiff Jia regularly spent around two hours or longer on touchup for a half day schedule of photoshoot and around four hours or longer for a full day schedule of photoshoot.

20

94.     Upon information and belief, throughout his employment with Defendants, Defendants did not utilize any time tracking device to record all hours worked by Plaintiff Jia. Plaintiff Jia regularly worked more than the number of hours scheduled to accommodate the unexpected delays at the wedding.

95.     Upon information and belief, throughout his employment with Defendants, Plaintiff Jia was compensated as follows: (i) $100 for a half day schedule, and (ii) $200 for a full day schedule.  Plaintiff Jia was not compensated for the time he spent at on touching up the photos. Plaintiff Jia was scheduled to receive wage payments in cash on the 8th of each month. Plaintiff Jia regularly did not receive wage payments until one or two months later than the scheduled pay day.

96.     Upon information and belief, throughout his employment with Defendants, Plaintiff Jia was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

97.     Upon information and belief, throughout his employment with Defendants, Plaintiff Jia was not overtime-exempt under federal and state laws.

98.     Upon information and belief, Plaintiff Jia was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Jia), containing information including, but not limited to, his rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

99.     Upon information and belief, Defendants did not provide Plaintiff Jia with a wage statement with every wage payment.

100.    Upon information and belief, from in or about May 2015 to March 4, 2020, Plaintiff Jin was employed as a receptionist and makeup artist by Defendants' wedding photography business. At the beginning of her employment, Plaintiff Jin worked at Defendant's store Laffection

Wedding, located at 35-56 Main Street, Flushing New York 11356. In or about February 2019, after Laffection Wedding was permanently closed, Plaintiff Jin was transferred to and started working at Paris Wedding Center, located at 42-55 Main Street, Flushing, New York 11355.

101.   Upon information and belief, throughout her employment with Defendants, Plaintiff Jin regularly worked six days a week without set days of rest. Plaintiff Jin regularly worked from around 10:00 a.m. to around 7:00 p.m. or 8:00 p.m. On some days, Plaintiff Jin was required to work at clients' weddings, where she would work (i) the half day schedule of five hours, (ii) the full day schedule of ten hours, or (iii) the full day and night schedule of twelve hours. Plaintiff Jin did not have uninterrupted meal breaks on workdays. Accordingly, Plaintiff Jin regularly worked more than forty (40) hours per week.

102.   Upon information and belief, throughout Plaintiff Jin's employment with Defendants, Plaintiff Jin was required to clock in and out using punch cards or fingerprints. Defendants required Plaintiff Jin to clock in and out using punch cards or fingerprints on the days when Plaintiff Jin worked in the store and the Long Island Studio, but does not use any time tracking device to record Plaintiff Jin's hours worked at clients' weddings.

103.   Upon information and belief, for all hours Plaintiff Jin worked in the store or in the Long Island Studio, she was compensated as follows: at the beginning of her employment with Defendants, Plaintiff Jin was paid $7.00 per hour; after one month of working with Defendants, her rate of pay was raised to $7.50 per hour and remained unchanged for a long period of period time; Plaintiff Jin's rate of pay was then raised to $8.00 per hour and remained unchanged for about a month; on her last pay raise, Plaintiff Jin's pay was changed to $9 per hour and remained unchanged until the end of her employment with Defendants. For all hours Plaintiff Jin worked at weddings, she was compensated as follows: (i) $105 for a half day schedule, (ii) $200 for a full

day schedule, and (iii) $305 for a full day and night schedule. Additionally, Plaintiff Jin also received a 3% or 5% commission for every client to whom she sold a photo service, depending on the type of service she sold. Plaintiff Jin was scheduled to receive wage payments on the 8th of every month, of which $1300 in check and the remaining in cash. Plaintiff Jin often did not receive payments until one or two months later than the scheduled pay day.

104.    Upon information and belief, throughout her employment with Defendants, Plaintiff Jin was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

105.    Upon information and belief, throughout her employment with Defendants, Plaintiff Jin was not overtime-exempt under federal and state laws.

106.    Upon information and belief, Plaintiff Jin was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Jin), containing information including, but not limited to, her rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

107.    Upon information and belief, Defendants did not provide Plaintiff Jin with a wage statement with every wage payment.

108.    Upon information and belief, from in or about March 2011 to in or about July 2013, Plaintiff Li was employed as a makeup artist by Defendants' wedding photography business. In or about July 2013, Plaintiff Li quit her job with Defendants. From in or about summer 2017 to March 4, 2020, Plaintiff Li resumed her employment as a makeup artist with Defendants and started working at Defendants' store Wedding in Paris, located at 4711 8th Avenue, Brooklyn, New York 11220, until March 2020. Occasionally, Plaintiff Li was required to work at Defendants' store Paris Wedding Center, located at 42-55 Main Street, Flushing, New York 11355.

109.    Upon information and belief, for the majority of her employment with Defendants, Plaintiff Li worked six to seven days a week without set days off. On some days, Plaintiff Li was required to work in the store or in the Long Island Studio, where she would work from around 10:00 a.m. to around 7:00 p.m. or 8:00 p.m. On the other days, Plaintiff Li was required to work at clients' weddings, where she would work (i) the half day schedule of five hours, (ii) the full day schedule of ten hours, or (iii) the full day and night schedule of twelve hours. Accordingly, Plaintiff Li regularly worked more than forty (40) hours per week.

110.    Upon information and belief, throughout Plaintiff Li's employment with Defendants, Defendants did not utilize time tracking devices to record all hours worked by Plaintiff Li. Defendants required Plaintiff Li to clock in and out using punch cards or fingerprints on the days when Plaintiff Li worked in the store and the Long Island Studio, but does not use any time tracking device to record Plaintiff Li's hours worked at clients' weddings.

111.    Upon information and belief, Since the resumption of her employment with Defendants in or around summer 2017 until the end of her employment, Plaintiff Li was compensated as follows: (i) $11 per hour for all hours worked in the store and the Long Island Studio, (ii) $105 for a half day schedule at a wedding, (iii) $200 for a full day schedule at a wedding, and (iv) $305 for a full day and night schedule at a wedding. Plaintiff Li was scheduled to receive wage payments in cash on the 8th of every month. Plaintiff Li often did not receive payments until one or two months later than the scheduled pay day.

112.    Upon information and belief, throughout her employment with Defendants, Plaintiff Li was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

113.    Upon information and belief, throughout her employment with Defendants, Plaintiff Li was not overtime-exempt under federal and state laws.

114.    Upon information and belief, Plaintiff Li was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Li), containing information including, but not limited to, her rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

115.    Upon information and belief, Defendants did not provide Plaintiff Li with a wage statement with every wage payment.

116.    Upon information and belief, from on or about September 15, 2010, to March 15, 2020, Plaintiff Su was employed as a receptionist by Defendants' wedding photography business located at 42-55 Main Street, Flushing, New York 11355.

117.    Upon information and belief, for the majority of her employment with Defendants, Plaintiff Su regularly worked five or six days a week without set days of rest. Plaintiff Su regularly worked from around 10:00 a.m. to around or 7:00 p.m. or 8:00 p.m. In the first three months of 2020, however, Plaintiff Su regularly worked from 12:00 p.m. to 7:00 p.m. Plaintiff Su did not have uninterrupted meal breaks on workdays. Accordingly, Plaintiff Su regularly worked more than forty (40) hours per week.

118.    Upon information and belief, throughout Plaintiff Su's employment with Defendants, Plaintiff Su was required to clock in and out using punch cards or fingerprints.

119.    Upon information and belief, throughout the employment of Plaintiff Su, she was compensated as follows: in or about 2010, Plaintiff Su was paid $7.00 per hour; after approximately one year of working with Defendants, Plaintiff Su's rate of pay was raised to $7.50 per hour and remained unchanged for a long period of period time; after a few more pay raises, in

or about 2017, Plaintiff Su's pay was adjusted to $9 per hour and remained unchanged until the end of her employment with Defendants. Additionally, Plaintiff Su also received a 3% or 5% commission for every client to whom she sold a photo service, depending on the type of service she sold. Plaintiff Su was scheduled to receive wage payments on the 8th of every month, of which $1800 in check and the remaining in cash. Plaintiff Su often did not receive payments until one or two months later than the scheduled pay day.

120.    Upon information and belief, throughout her employment with Defendants, Plaintiff Su was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

121.    Upon information and belief, throughout her employment with Defendants, Plaintiff Su was not overtime-exempt under federal and state laws.

122.    Upon information and belief, Plaintiff Su was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Su), containing information including, but not limited to, her rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

123.    Upon information and belief, Defendants did not provide Plaintiff Su with a wage statement with every wage payment.

124.    Upon information and belief, from on or about April 27, 2013 to March 15, 2020, Plaintiff Xie was employed as a videographer by Defendant's wedding photography business for its store Paris Wedding Center, located at 42-55 Main Street, Flushing, New York 11355.

125.    Upon information and belief, throughout her employment with Defendants, Plaintiff Xie was required to remain on call every day and regularly worked about seven days a week without set days of rest. For wedding filming, Plaintiff Xie had the following work schedules:

(i) the half day schedule of five hours, (ii) the full day schedule of ten hours, or (iii) the full day and night schedule of twelve hours. Plaintiff Xie was regularly assigned about ten to twenty weddings per month. Additionally, Plaintiff Xie was required to spend time at home to edit the films. For a half day schedule of filming, Plaintiff Xie regularly spent approximately an equal amount of time on editing as filming; for a full day or full day and night schedule of filming, Plaintiff Xie regularly spent approximately twice or three times as much time on editing as filming. Accordingly, Plaintiff Xie regularly worked over forty (40) hours a week.

126.    Upon information and belief, throughout her employment with Defendants, Plaintiff Xie was not required to record her hours, nor to her knowledge had Defendants utilized any time tracking device to record her hours.

127.    Upon information and belief, throughout her employment with Defendants, Plaintiff Xie was compensated as follows: (i) from April 27 to April 30, 2013, Plaintiff Xie's rate of pay was $0; (ii) from May 1, 2013, to March 31, 2015, Plaintiff Xie's rate of pay fluctuated between $365 per month to $1,500 per month; (iii) from April 1, 2015, to April 1, 2016, Plaintiff Xie received a fixed rate of pay of $2000 per month, regardless of the number of hours worked; (iv) from April 1, 2016, to April 1, 2017, Plaintiff Xie received a fixed rate of pay of $2300 per month, regardless of the number of hours worked; (v) from April 1, 2017 to May 31, 2018, Plaintiff Xie received a fixed rate of pay of $2600 per month, (vi) from June 1, 2018 to the end of her employment, Plaintiff Xie received a fixed rate of pay of $3200 per month, regardless of the number of hours worked. Plaintiff Xie was scheduled to receive wage payments in cash on the 8th of each month. Plaintiff Xie regularly did not receive wage payments until one or two months later than the scheduled pay day.

128.     Upon information and belief, throughout her employment with Defendants, Plaintiff Xie was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

129.     Upon information and belief, throughout her employment with Defendants, Plaintiff Xie was not overtime-exempt under federal and state laws.

130.     Upon information and belief, throughout her employment with Defendants, despite being an employee of Defendants' store Paris Wedding Center located in Flushing, New York, Plaintiff Xie was often required to work at Defendants' other stores located in Brooklyn and Chinatown. Plaintiff Xie also often received assignments for weddings outside of the state of New York, such as Pennsylvania, Connecticut, and New Jersey. Plaintiff Xie was required to pay out-of-pocket for her commute or drive her own car to the filming locations. Plaintiff Xie paid out-of-pocket for gases, car maintenances and traffic tickets.

131.     Upon information and belief, in or around 2014, Plaintiff Xie injured her ankle while filming a wedding for her job. Plaintiff Xie sustained impact from her injury for over one year and received physical therapy sessions. Plaintiff Xie did not receive any day off from work or any compensation from Defendants for her work-related injury.

132.     Upon information and belief, Plaintiff Xie was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Xie), containing information including, but not limited to, her rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

133.     Upon information and belief, Defendants did not provide Plaintiff Xie with a wage statement with every wage payment.

134.    Upon information and belief, from in or about March 2010 to March 1, 2020, Plaintiff Yao was employed as a photographer by Defendants' wedding photography business for its store Paris Wedding Center, located at 42-55 Main Street, Flushing, New York 11355.

135.    Upon information and belief, throughout his employment with Defendants, Plaintiff Yao regularly worked about six days a week without set days of rest. Plaintiff Yao regularly received three types of photoshoot assignments: studio, outdoor, and wedding. For wedding photoshoots, Plaintiff Yao had the following work schedules: (i) the half day schedule of five hours, (ii) the full day schedule of ten hours, or (iii) the full day and night schedule of twelve hours. Additionally, Plaintiff Yao was required to spend time at home to touch up his photos. Plaintiff Yao regularly spent at least three to four hours on touching up each photoshoot. Accordingly, Plaintiff Yao regularly worked over forty (40) hours a week.

136.    Upon information and belief, throughout his employment with Defendants, Plaintiff Yao was not required to record his hours, nor to his knowledge had Defendants utilized any time tracking device to record his hours.

137.    Upon information and belief, throughout his employment with Defendants, Plaintiff Yao received a fixed rate of pay of $3800 per month, regardless of the number of hours worked. Plaintiff Yao was scheduled to receive wage payments in cash on the 8th of each month, of which $2,800 or $2,900 in cash, and the remaining in check. Plaintiff Yao regularly did not receive wage payments until one or two months later than the scheduled pay day.

138.    Upon information and belief, throughout his employment with Defendants, Plaintiff Yao was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

139.     Upon information and belief, throughout his employment with Defendants, Plaintiff Yao was not overtime-exempt under federal and state laws.

140.     Upon information and belief, throughout his employment with Defendants, despite being an employee of Defendants' store Paris Wedding Center located in Flushing, New York, Plaintiff Yao was often required to work at client's weddings, the Long Island Studio, and Defendants' other stores located in Brooklyn and Chinatown. Plaintiff Yao was required to pay out-of-pocket for his commute or drive his own car to the filming locations. Plaintiff Yao paid out-of-pocket for gases, car maintenances and traffic tickets.

141.     Upon information and belief, Plaintiff Yao was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Yao), containing information including, but not limited to, his rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

142.     Upon information and belief, Defendants did not provide Plaintiff Yao with a wage statement with every wage payment.

143.     Upon information and belief, from on or about August 1, 2018 to March 15, 2020, Plaintiff Zheng was employed as a photographer by Defendants' wedding photography business for its store Paris Wedding Center, located 42-55 Main Street, Flushing, New York 11355.

144.     Upon information and belief, throughout his employment with Defendants, Plaintiff Zheng regularly worked about six days a week with one day off on Friday. Plaintiff regularly received three types of photoshoot assignments: studio, outdoor, and wedding. For wedding photoshoots, Plaintiff Zheng had the following work schedules: (i) the half day schedule of five hours, (ii) the full day schedule of ten hours, or (iii) the full day and night schedule of twelve hours.

Additionally, Plaintiff Zheng was required to spend time at home to touch up his photos. Plaintiff Zheng regularly spent at least three to four hours to touch up each photoshoot. Accordingly, Plaintiff Zheng regularly worked over forty (40) hours a week.

145.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zheng was not required to record his hours, nor to his knowledge had Defendants utilized any time tracking device to record his hours.

146.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zheng received a fixed rate of pay of $3600 per month, regardless of the number of hours worked. Plaintiff Zheng was scheduled to receive wage payments in cash on the 8th of each month. Plaintiff Zheng regularly did not receive wage payments until one or two months later than the scheduled pay day.

147.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zheng was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

148.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zheng was not overtime-exempt under federal and state laws.

149.    Upon information and belief, throughout his employment with Defendants, despite being an employee of Defendants' store Paris Wedding Center located in Flushing, New York, Plaintiff Zheng was often required to work at client's weddings, the Long Island Studio, Defendants' other stores located in Brooklyn and Chinatown. Plaintiff Zheng also received assignments for weddings outside of the state of New York, such as New Jersey. Plaintiff Zheng was required to pay out-of-pocket for his commute or drive his own car to the filming locations. Plaintiff Zheng paid out-of-pocket for gases, car maintenances and traffic tickets.

31

150.    Upon information and belief, Plaintiff Zheng was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Zheng), containing information including, but not limited to, his rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

151.    Upon information and belief, Defendants did not provide Plaintiff Zheng with a wage statement with every wage payment.

152.    Upon information and belief, from on or about March 1, 2017, to March 15, 2020, Plaintiff Zhu was employed as a videographer by Defendants' photography business for its stores at various locations in New York.

153.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zhu regularly worked about five to six days a week without set days of rest. For wedding filming, Plaintiff Zhu had the following work schedules: (i) the half day schedule of five hours, (ii) the full day schedule of ten hours, or (iii) the full day and night schedule of twelve hours. Plaintiff Zhu was regularly assigned about eight to eighteen weddings per month. Additionally, Plaintiff Zhu was required to spend time at home to edit the films. For a half day schedule of filming, Plaintiff Zhu regularly spent approximately an equal amount of time on editing as filming; for a full day or full day and night schedule of filming, Plaintiff Zhu regularly spent approximately twice or three times as much time on editing as filming. Accordingly, Plaintiff Zhu regularly worked over forty (40) hours a week.

154.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zhu was not required to record his hours, nor to his knowledge had Defendants utilized any time tracking device to record his hours.

32

155.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zhu was compensated as follows: (i) from on or about March 1 to March 31, 2017, Plaintiff Zhu received a fixed rate of pay of $1300 per month, regardless of the number of hours worked; (ii) in or about April 2017, Plaintiff Zhu's rate of pay was adjusted to $1500 per month, regardless of the number of hours worked; (iii)  after a few pay raises, in or about July 2019, Plaintiff Zhu' rate of pay was increased to $2300 per month, regardless of how many hours he worked, and remained unchanged until the end of his employment. Plaintiff Zhu was scheduled to receive wage payments on the 8th of each month. Plaintiff Zhu regularly did not receive wage payments until one or two months later than the scheduled pay day.

156.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zhu was not compensated for all hours worked over forty (40) in each workweek in accordance to state and federal laws.

157.    Upon information and belief, throughout his employment with Defendants, Plaintiff Zhu was not overtime-exempt under federal and state laws.

158.    Upon information and belief, Plaintiff Zhu was not provided a written wage notice upon hiring, in English and in Chinese (the primary language identified by Plaintiff Zhu), containing information including, but not limited to, his rate of pay and basis thereof, allowances, including tip and meal credits, claimed by Defendants, the regular pay day designated by Defendants.

159.    Upon information and belief, Defendants did not provide Plaintiff Zhu with a wage statement with every wage payment.

160.    Upon information and belief, Plaintiff Cao did not receive wage payments for certain amount of time worked in 2020, the total of which is $813.99.

33

161.    Upon information and belief, Plaintiff He did not receive wage payments for all hours worked in October through December 2019 and January through March 2020, the total of which is $17,800.00.

162.    Upon information and belief, Plaintiff Jia did not receive wage payments for certain amount of time worked in December in 2019, the total of which is $100.00.

163.    Upon information and belief, Plaintiff Jin did not receive the check portion of her wage payments for all hours worked in December 2019 and January 2020 and did not receive wage payments for all hours worked in February and March 2020, the total of which is $6165.06.

164.    Upon information and belief, Plaintiff Li did not receive wage payments for all hours worked in February and March 2020, the total of which is $1848.52.

165.    Upon information and belief, Plaintiff Su did not receive the check portion of her wage payments for all hours worked in January and February 2020 and did not receive wage payments for all hours worked in March 2020, the total of which is $5027.00.

166.    Upon information and belief, Plaintiff Xie did not receive wage payments for all hours worked in 2020, the total of which is $8,000.00.

167.    Upon information and belief, Plaintiff Yao did not receive the check portion of his wage payments for all hours worked in January 2020 and did not receive wage payments for all hours worked in February and March 2020, the total of which is 4,531.00.

168.    Upon information and belief, Plaintiff Zheng did not receive wage payments for all hours worked in February and March 2020, the total of which is $3,498.00.

169.    Upon information and belief, Plaintiff Zhu did not receive wage payments for the half month of January 2020 and all hours worked in February and March 2020, the total of which is $4350.00.

170.     Upon information and belief, Defendant Yang and Defendant Lam allegedly transferred their wedding photography business to Defendant Huang. Defendants agreed in text messages and written documents that Defendant Huang is the debtor of the amount of the unpaid wage payments owed to Plaintiffs and other similarly situated employees.

171.     Upon information and belief, throughout Plaintiffs' employment, Defendants have had at least 20-25 employees.

## STATEMENT OF CLAIMS

### COUNT I
### [Violations of the Fair Labor Standards Act—Minimum Wage Brought on behalf of Plaintiffs and the FLSA Collective]

172.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

173.     At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §206(a) and §207(a). Further, Plaintiffs are covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

174.     At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA.

175.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

176.     The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

177.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

178.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

179.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT II
### [Violation of New York Labor Law—Minimum Wage Brought on behalf of Plaintiff and Rule 23 Class]

180.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

181.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

182.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

183.    Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

36

## COUNT III
### [Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff and the FLSA Collective]

184.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

185.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

186.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages.  29 U.S.C. §216(b).

187.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime premiums violated the FLSA.

188.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a  half  to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours  per  workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

189.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

190.    Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

191.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT IV
### [Violation of New York Labor Law—Overtime Pay Brought on behalf of Plaintiff and the Rule 23 Class]

192.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

193.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

194.    Defendants' failure to pay Plaintiffs and the Rule 23 Class their overtime premiums violated the NYLL.

195.    Defendants' failure to pay Plaintiffs and the Rule 23 Class was not in good faith.

## COUNT V
### [Violation of New York Labor Law—Spread-of-Hour Pay]

196.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

197.    The NYLL and supporting regulations require employers to pay employees whose workday begins and ends more than 10 hours apart an extra hour of pay, known as the spread-of-our rate. An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage for any day in which the "spread of hours" exceeds 10 hours or there is a "split shift", which  includes all time working, time off for meals, and any off-duty time during or between shifts.12 N.Y.C.R.R. §142-2.4

198.    Pursuant to the New York Wage Theft Prevention Act (hereinafter "NYWTPA"), an employer who fails to pay proper the spread of hours compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

199.    Defendants' failure to give Plaintiffs the spread-of-hours compensation, for days Plaintiffs worked more than ten hours, violated the NYCRR §142-2.4.

200.    Defendants have acted willfully and have either known that their conduct violated the NYLL and NYCRR or have shown a reckless disregard for the matter of whether their conduct violated the NYLL and NYCRR. Defendants have not acted in good faith with respect to the conduct alleged herein.

## COUNT VI
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement]

201.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

202.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip,

meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

203.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

204.    Defendants not only did not provide notice to each employee at time of hire but also failed to provide notice to Plaintiffs thereafter.

205.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT VII**
**[Violation of New York Labor Law—New York Pay Stub Requirement]**

206.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

207.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

208.    Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff and did not provide the paystub on or after each Plaintiff's payday.

209.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

### Prayer For Relief

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective plaintiffs and rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)    Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)    Certification of this case as a collective action pursuant to FLSA;

e)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

f)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)      An injunction against Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)      An award of unpaid wages, minimum wages and overtime premiums due Plaintiff and the Collective Action members under the FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of one hundred percent of the underpayment under NY Wage Theft Prevention Act, and interest;

i)      An award of unpaid spread-of-hour pay due under New York Labor Law, pls compensatory and liquidated damages in the amount of one hundred percent of the underpayment under NY Wage Theft Prevention Act, and interest;

j)      An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law;

k)      An award of damages for Defendant's failure to provide correct wage statements with every payment of wages as required under the New York Labor Law;

l)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages, minimum wages and overtime compensation pursuant to 29 U.S.C. §216;

m)     An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n)      The cost and disbursements of this action;

o)      An award of prejudgment and post-judgment fees;

42

p)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

q)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
May 26, 2020

                         Respectfully Submitted,

                         HANG & ASSOCIATES, PLLC
                         *Attorneys for Plaintiff, Proposed FLSA*
                         *Collective and Potential Rule 23 Class*

                         By:  /s/  Jian Hang_____
                         Jian Hang
                         136-20 38th Ave. Suite 10G
                         Flushing, NY 11354
                         Tel: (718) 353-8588
                         Fax: (718) 353-6288
                         Email: jhang@hanglaw.com