UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
XINGYAN CAO, *individually and on behalf
of all other employees similarly situated*, HE HE,
*individually and on behalf of all other employees
similarly situated*, BOZHENG JIA, *individually
and on behalf of all other employees similarly
situated*, YUE JIN, *individually and on behalf
of all other employees similarly situated*, YING LI,
*individually and on behalf of all other employees
similarly situated*, YITING SU, *individually and
on behalf of all other employees similarly situated*,
HAOYI XIE, *individually and on behalf of all other
employees similarly situated*, JUNWU YAO,
*individually and on behalf of all other employees
similarly situated*, RONG HUA ZHENG, *individually
and on behalf of all other employees similarly situated*,
XINGWEI ZHU, *individually and on behalf of all other
employees similarly situated*, JUNCHEN CHEN, and
JIA SI,

      Plaintiffs,

    v.

FLUSHING PARIS WEDDING CENTER LLC,
*doing business as* Paris Wedding Center,
LAFFECTION WEDDING LLC, *corporate
defendant doing business as* Laffection Wedding,
PARIS WEDDING CENTER CORP., *corporate
defendant doing business as* Paris Wedding Center,
ROMANTIC PARIS LLC, *corporate defendant
doing business as* Romantic Paris Wedding,
WEDDING IN PARIS LLC, *corporate defendant
doing business as* Wedding in Paris, MAX HUANG,
*individual defendant*, SAU W LAM, *individual
defendant*, FIONA RUIHUA YANG, *individual
defendant,* ABC CORP., *doing business as* Max Photo
NY, *doing business as* Maxhuang Studio, MAX
WEDDING NY INC., *doing business as* Paris Wedding
Center, MAX WEDDING BK INC., *doing business as*
Paris Wedding Brooklyn,

      Defendants,

**MEMORANDUM AND ORDER**
20-CV-2336 (RPK) (RLM)

1

MAX HUANG, *individual defendant*,

        Cross-Claimant,

    v.

FLUSHING PARIS WEDDING CENTER LLC,

        Cross-Defendant,

MAX HUANG, *individual defendant*,

        Counterclaimant,

    v.

XINGYAN CAO, *individually and on behalf
of all other employees similarly situated*,

        Counterclaim-Defendant,

MAX HUANG, *individual defendant*,

        Third-Party Plaintiff,

    v.

JIA JIA,

        Third-Party Defendant.

-----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

Twelve former employees of a wedding photography business filed this collective action against eleven defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq. See* Am. Compl. (Dkt. #8). Defendants Max Wedding NY Inc., Max Wedding BK Inc., and Max Huang (the "Huang Defendants") have filed counterclaims. They allege that plaintiffs (i) have no basis to sue the Huang Defendants; (ii) defamed the Huang Defendants, and (iii) violated the

Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq. See* Am. Answer (Dkt. #21). Plaintiffs now move to dismiss defendants' counterclaims. *See* Pls.' Mem. in Supp. of Mot. to Dismiss Defs.' Counterclaims (Dkt. #22-1) ("Pls.' Mem."). For the reasons stated below, plaintiffs' motion is granted and the counterclaims are dismissed.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the complaint and the counterclaims. The facts alleged in the counterclaims are assumed true for the purposes of this order. *See Jalayer v. Stigliano*, 420 F. Supp. 3d 58, 61 n.1 (E.D.N.Y. 2018).

#### A.  Allegations in the Complaint

This lawsuit is brought by Plaintiffs Xingyan Cao, He He, Bozheng Jia, Yue Jin, Ying Li, Yiting Su, Haoyi Xie, Junwu Yao, Rong Hua Zheng, Xingwei Zhu, Junchen Chen, and Jia Si. According to plaintiffs, defendants Flushing Paris Wedding Center LLC, Laffection Wedding LLC, Paris Wedding Center Corp., Romantic Paris LLC, Wedding in Paris LLC, ABC Corp., Max Wedding NY Inc., and Max Wedding BK Inc. operate a wedding photography business in New York. *See* Am. Compl. ¶¶ 33-59, 89. Plaintiffs allege that defendant Max Huang was or is the owner of the corporate defendants along with defendants Sau W. Lam and Fiona Ruihua Yang. *Id.* ¶¶ 61-69.

The complaint alleges that plaintiffs worked in various roles for the defendants' wedding photography business. *Id.* ¶¶ 9-32. All of the plaintiffs allegedly left their employment with defendants in March 2020. *See id.* ¶¶ 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32. Around that time, the COVID-19 pandemic caused Paris Wedding Center and Wedding in Paris to close temporarily. *Id.* ¶¶ 91-92.

Plaintiffs allege that Max Wedding NY Inc. opened at the address occupied by Flushing Paris Wedding and Paris Wedding Center in July 2020. *Id.* ¶ 93. Plaintiffs also allege that Max Wedding BK Inc. opened in the same location as Wedding in Paris in July 2020. *See id.* ¶ 94. Max Wedding NY Inc. allegedly offers similar services to those offered by Flushing Paris Wedding and Paris Wedding Center and uses the same Facebook page and the same products as those entities. *Id.* ¶¶ 93, 97-98. Max Wedding BK Inc. allegedly offers similar services as Wedding in Paris and uses the same Facebook page and the same products as Wedding in Paris. *Id.* ¶¶ 94, 97-98.

Defendants Huang and Yang allegedly managed all the corporate defendants. *Id.* ¶ 99. Plaintiffs also allege that Yang and Lam transferred their interests in the wedding photography businesses to Huang. *See id.* ¶ 221. They allege that "[m]anagement at Max Wedding NY Inc[.] and Max Wedding BK Inc[.] were aware of the claims of [p]laintiffs prior to the company taking ownership of the business." *Id.* ¶ 100.

According to plaintiffs, defendants failed to pay plaintiffs minimum and overtime wages pursuant to the FLSA and the NYLL, failed to pay plaintiffs extra "spread-of-hours" compensation when their workdays exceeded ten hours as required by the NYLL, and failed to provide proper wage notices and wage statements as required by the NYLL. *Id.* ¶¶ 223-30, 231-34, 235-42, 243-46, 247-51, 252-60.

**B. The Huang Defendants' Responses**

The Huang Defendants dispute whether they are liable for FLSA and NYLL violations. They assert that Lam sold Flushing Paris Wedding Center to Max Wedding NY Inc. Am. Answer ¶ 268. The sales contract included a clause that made undisclosed "debts, obligations, [and] liabilities" the seller's responsibility. *Ibid.* The bill of sale stated that "the [t]ransferor

4

[was] not indebted to anyone." *Id.* ¶ 269 (emphasis omitted).  Huang and Lam allegedly executed an agreement holding the buyer harmless for "claims and dispute[s]" relating to the business and arising prior to April 13, 2020.  *Id.* ¶ 270.  On those bases, the Huang Defendants allege that "[p]laintiffs have no actionable grounds for . . . [their] lawsuit . . . and are suing the wrong parties." *Id.* ¶ 271.

The Huang Defendants also accuse plaintiff of various wrongful acts.  They allege that plaintiffs have "made numerous false statements both orally and in writing, . . . widely circulated . . . through social media" "to discredit Huang and defame both [Huang] and [Huang's] business." *Id.* ¶ 273.  In addition, the Huang Defendants allege that various plaintiffs participated in a "well-orchestrated plan . . . to threaten and inflict physical injury" on Huang to "extort[] from Huang the [money] owed [p]laintiffs by . . . Lam." *Id.* ¶ 279; *see id.* ¶¶ 275-278.  Plaintiff He allegedly "devised and directed" "a plot" to "conduct[] sit-ins at Huang's office . . . to intimidate . . . Huang and his employees[] and to deter customers." *Id.* ¶ 275. On May 4, 2020, He, Yao, and others allegedly "threaten[ed] Huang" and forced Huang to sign "an I.O.U. . . . stating that he owed . . . wages to the [p]laintiffs." *Id.* ¶ 276.  Two days later, Cao, Jin, Si, and Chen threated Huang and forced him to sign another I.O.U.  *Id.* ¶ 277.  He returned on May 8, 2020 with Zheng, Xie, and Li and demanded that Huang give his business to plaintiffs.  *Id.* ¶ 278.  The Huang Defendants allege that Li's husband, Jia Jia, attacked Huang.  *Ibid.*  Huang allegedly suffered cuts and bruises.  *Id.* ¶ 279.

## II.        Procedural Background

Plaintiffs filed an initial complaint on May 26, 2020 and filed the operative amended complaint on August 27, 2020.  The amended complaint brings claims against all defendants for unpaid minimum wages and overtime wages under the FLSA and the NYLL, and for spread-of-hours compensation and damages for wage-notice and wage-statement violations under the

NYLL. *See* Am. Compl. ¶¶ 223-30, 231-34, 235-42, 243-46, 247-51, 252-60.  Plaintiffs seek a declaratory judgment, injunctive relief, compensatory, liquidated, and punitive damages, and costs and fees.  *See id.* at 49-51 ("Prayer For Relief").

The Huang Defendants filed their amended answer on April 19, 2021.  As relevant here, the amended answer brings counterclaims against all plaintiffs for (i) "suing the wrong parties," (ii) defamation, and (iii) violations of the RICO Act.  *See id.* ¶¶ 268-71, 273, 275-79, 288.

Plaintiffs have filed a motion to dismiss the counterclaims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Pls.' Mem.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) applies to both claims and counterclaims.  *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 202 (S.D.N.Y. 2020).  Accordingly, "[t]he pleading standard applicable to complaints under [Rule] 12(b)(6) applies equally to counterclaims."  *Burton v. Label, LLC*, 344 F. Supp. 3d 680, 691-92 (S.D.N.Y. 2018) (collecting cases); *accord Demirovic v. Ortega*, No. 15-CV-327 (CLP), 2016 WL 11472745, at *3 (E.D.N.Y. Sept. 15, 2016); *see Jalayer*, 420 F. Supp. 3d at 62 (applying pleading standard applicable to complaints under Rule 12(b)(6) to counterclaim).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a counter-claimant must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That standard is satisfied when the litigant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In contrast, a counterclaim is properly dismissed where, as a matter of law, "the allegations[,] . . . however true, could not raise a claim of entitlement to relief." *Twombly*, 550

Case 1:20-cv-02336-RPK-RLM   Document 42   Filed 01/25/22   Page 7 of 11 PageID #: 624

U.S. at 558.  A counterclaim is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in a claim or counterclaim as true.  *Id.* at 678.  But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid.*

**DISCUSSION**

All three of the Huang Defendants' counterclaims fail to state a claim and are dismissed.

## I.        "Wrong Parties" Counterclaim

The Huang Defendants' counterclaim for "suing the wrong party" is dismissed because the Huang Defendants have not adequately pleaded a cause of action.  The Huang Defendants do not identify the cause of action they are seeking to pursue.  And while they could survive a motion to dismiss despite failing to identify "the legal theory or theories and statutory basis supporting [their] claim" if they gave "full notice of the circumstances giving rise to" a cognizable claim, *Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2d Cir. 1980), the Huang Defendants have not done so.  While New York law does provide a cause of action for malicious prosecution of a civil action, the Huang Defendants fail to plausibly allege multiple elements of that tort.  For instance, they fail to allege that the civil action on which the claim is based has "end[ed] in failure or, in other words, terminate[d] in favor of," the Huang Defendants, and that the claims against them have been brought "with malice." *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 284 (E.D.N.Y. 2014) (quoting *Engel v. CBS*, 145 F.3d 499, 502 (2d Cir. 1998)), *appeal dismissed*, 673 F. App'x 33 (2d Cir. 2016).  Nor have the Huang Defendants pleaded facts to support the other traditional wrongful-litigation tort of malicious abuse of process.  The "institution of a civil action by summons and complaint"—the only legal process that the Huang Defendants describe—cannot be the basis for such a claim because those filings

7

are "not legally considered process capable of being abused." *PSI Metals, Inc. v. Firemen's Ins. Co. of Newark*, 839 F.2d 42, 43 (2d Cir. 1988). Simply put, the Huang Defendants have not given adequate notice of any claim under New York law through their allegations about suing the wrong party.

The wrong-parties argument need not be reconstrued as an affirmative defense because it duplicates an affirmative defense already asserted. Where "a party mistakenly designates a defense as a counterclaim . . . the court must, if justice requires, treat the pleading as though it were correctly designated." Fed. R. Civ. P. 8(c)(2). But the Huang Defendants have already pleaded their wrong-parties argument as an affirmative defense. *See* Am. Answer ¶ 266 (asserting affirmative defense that the Huang Defendants are not liable "given that Huang was not . . . an owner, a partner, a shareholder, . . . a manager, or a successor of any liability of the prior business"). Since the Huang Defendants do not ask for the Court to construe the counterclaim as a distinct defense, and since they have "already asserted" their arguments with respect to successor liability as a defense, "there is no need to treat the mislabeled . . . counterclaim as an affirmative defense," *BAT LLC v. TD Bank, N.A.*, No. 15-CV-5839 (RRM) (CLP), 2018 WL 4922736, at *14 n.13 (E.D.N.Y. July 31, 2018), *report and recommendation adopted*, 2018 WL 4693644 (E.D.N.Y. Sept. 28, 2018).

For those reasons, the Huang Defendants' counterclaim that plaintiffs have sued the wrong parties is dismissed.

## II.        Defamation Counterclaim

The Huang Defendants have also failed to state a claim for defamation. "Under New York law[,] a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times*

*Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  The claim must also "adequately identif[y] the purported

communication." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal

quotation marks and citation omitted).  Although the Huang Defendants assert that plaintiffs

"made numerous false statements . . . in writing" about the Huang Defendants, they do not

specify what statements were made or the false contents of those statements.  Am. Answer ¶

273(1).  Accordingly, the counterclaim consists of a "[t]hreadbare recital[] of the elements" of

defamation, supported only by a vague assertion that plaintiffs made false statements.  *Iqbal*, 556

U.S. at 678.  Those conclusory allegations are insufficient to state a claim, *see ibid.*, and so the

defamation counterclaim is dismissed.

**III.       RICO Counterclaim**

The Huang Defendants have not adequately pleaded a RICO claim.

The federal RICO statute provides a private right of action to "[a]ny person injured in his

business or property by reason of a violation of section 1962" of the RICO Act. 18 U.S.C.

§ 1964(c).  Section 1962, in turn, makes it unlawful "for any person employed by or associated

with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce,

to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through

a pattern of racketeering activity."  *Id.* § 1962(c).  "Racketeering activity" includes "act[s] or

threat[s]" involving state law crimes of "murder, kidnapping, gambling, arson, robbery, bribery,

extortion, dealing in obscene matter, or dealing in a controlled substance" that are "punishable by

imprisonment for more than a year," and "any act which is indictable" under specified provisions

of Title 18 of the United States Code.  *Id.* §§ 1961(1)(A), 1961(1)(B).

Of particular relevance, the RICO statute requires that a plaintiff plead a RICO

enterprise.  Specifically, to plead a violation of Section 1962, a plaintiff must allege "(1) that the

defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of

'racketeering activity' (5) directly or indirectly invests in, or maintains an[] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)); *see* 18 U.S.C. §§ 1962(a)-(c). The RICO statute defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO enterprise is therefore "'a group of persons associated together for a common purpose of engaging in a course of conduct,' the existence of which is proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Cap. Asset Mgmt, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). Such an enterprise "must be separate from the pattern of racketeering activity." *Ibid.* (citing *Turkette*, 452 U.S. at 583). While the enterprise requirement is "most easily satisfied when the enterprise is a formal legal entity," *ibid.*, it may also be satisfied by some other "ascertainable structure distinct from that inherent in a pattern of racketeering," *Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004) (citation omitted).

The Huang Defendants have failed to adequately allege the existence of a RICO enterprise. They plead no facts that suggest that the plaintiffs formed an enterprise "separate from the pattern of racketeering activity" described in the counterclaims. *First Cap. Asset Mgmt.*, 385 F.3d at 173. For example, the Huang Defendants make no allegations about the alleged enterprise's "membership, purpose, and structure," *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007), or "the mechanics of the alleged ongoing working relationship among defendants," *Cont'l Petrol. Corp., Inc. v. Corp. Funding Partners,*

*LLC*, No. 11-CV-7801 (PAE), 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012).  Instead, they simply allege that He plotted with and directed other plaintiffs ("and others") to commit the alleged RICO Acts, and that the plaintiffs had a "well-orchestrated plan" to extort Huang.  Am. Answer ¶¶ 276, 279; *see id.* ¶¶ 275, 277-78.  Since the Huang Defendants have failed allege a "RICO enterprise that existed separate and apart from any pattern of racketeering activity in which the [counterclaim defendants] . . . engaged," *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009), their RICO counterclaim is dismissed.

## CONCLUSION

The Huang Defendants' counterclaims are dismissed.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: January 25, 2022
Brooklyn, New York

11